```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/27/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Linda M. Freedman, et al.,

                              Plaintiffs,

-against-

Michael F. Rakosi, et al.,

                              Defendants.

1:23-cv-00472 (AT) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Pending before the Court is a motion by Plaintiffs Linda M. Freedman ("Freedman") and her brother Stanley Sperber ("Sperber") (collectively, "Plaintiffs"), pursuant to N.Y. Rule of Professional Conduct 1.18, for an order disqualifying Kevin Fritz ("Attorney Fritz"), Mitchell Schuster ("Attorney Schuster") and Meister Seelig & Fein PLLC ("Meister Seelig") from representing defendant Michael Rakosi ("Rakosi"), or any other defendant in this action. (Pls.' 4/14/23 Not. of Mot., ECF No. 40.) For the reasons set forth below, Plaintiffs' motion is GRANTED.

**BACKGROUND**

Plaintiffs and Rakosi are partners in four real estate partnerships, *i.e.*, Franklin Holding Co., RSR Holding Co., Belkar Holding Co. and Windshire Apts. (collectively, the "Partnerships"). (Am. Compl., ECF No. 3, ¶¶ 10-11.)[1] In early 2021, Plaintiffs began to consider litigation related to how the Partnerships were being operated and managed. (Freedman Decl., ECF No. 41, ¶ 4.) Plaintiffs asked Hillel Abrams ("Attorney Abrams"), who is a California attorney,[2] to assist them in

---

[1] A fourth partner in the Partnerships was Stanley Rosenbloom ("Rosenbloom"), who later became incompetent. (Am. Compl. ¶ 6.) His attorney-in-fact, who holds a power of attorney for Rosenbloom, is defendant Susan Rakosi Rosenbloom ("Susan R."). (*Id.* ¶¶ 6-7.)

[2] Attorney Abrams is Freedman's son and thus Sperber's nephew. (Freedman Decl. ¶ 3.)

interviewing counsel for the purposes of assessing the viability of a lawsuit against Rakosi and the Partnerships' manager, defendant Weber Realty Management LLC ("Weber Realty"). (*Id*. ¶¶ 3-4; Abrams Decl., ECF No. 42, ¶ 3.)

On February 8, 2021, Attorney Abrams called Attorney Fritz, a partner at Meister Seelig, about potentially representing Plaintiffs in a lawsuit against Rakosi and Weber Realty. (*See* Abrams Decl. ¶¶ 5-9; Fritz Decl., ECF No. 56, ¶¶ 3-4, 10.) The call lasted approximately 45 minutes. (Abrams Decl. ¶ 5; Fritz Decl. ¶ 3; 5/24/23 Tr., ECF No. 67, at 20.)[3] Attorney Abrams and Attorney Fritz do not completely agree about what was discussed during the call. They both agree that they discussed the structure of the Partnerships; prior litigations filed in the Supreme Court, New York County, involving the Partnerships; the written agreements for the Partnerships; and the written management agreement with Weber Realty. (*See* Fritz Decl. ¶ 4; *see also* Abrams Decl. ¶ 5.) Attorney Abrams contends that he discussed with Attorney Fritz "grievances" that Plaintiffs had with Rakosi that are not included in the pleadings in this case; "the basis for claims" that have not been asserted in this case; Plaintiffs' "private thoughts" about the Partnerships; and potential sources for financing of litigation (*see* Abrams Decl. ¶¶ 6-8), but Attorney Fritz denies that such topics were discussed during the call. (*See* Fritz Decl. ¶¶ 7-9.)[4]

A day later, on February 9, 2021, Attorney Abrams sent an email to Attorney Fritz in which he enclosed copies of one of the partnership agreements and the Weber Realty management

---

[3] Attorney Abrams stated in his declaration that the call "lasted at least an hour to an hour and a half" (Abrams Decl. ¶ 5), but Attorney Fritz stated that the call "lasted about forty-five minutes." (Fritz Decl. ¶ 3; *see also* 5/24/23 Tr. at 11.) During the May 24, 2023 hearing in this case, Attorney Abrams testified that the call was "45 minutes to an hour or more." (5/24/23 Tr. at 20.)

[4] The testimony provided at the May 24, 2023 hearing by Attorney Fritz and Attorney Abrams about the content of their discussions during the February 8, 2021 call largely was consistent with what each stated in their respective declarations. (*See* 5/24/23 Tr. at 12-13, 21-23, 32-34, 46-47, 49, 52, 54-55.)

agreement.[5] The five-paragraph email addresses revisions made to the management agreement, which is a topic that Attorney Abrams acknowledges in his publicly filed affidavit that he discussed with Attorney Fritz. (*See* Abrams Decl. ¶ 6.) The email also addresses matters relating to Jeffrey Weber (referred to in the email as "Jeff").[6]

On February 11, 2021, Attorney Abrams sent an email to Attorney Fritz stating that Attorney Abrams had "planned to arrange for the partners to speak with [Attorney Fritz] before they hired an attorney"; that, "without [Attorney Abrams'] knowledge, they retained other attorneys"; that he "apologize[d] for taking [Attorney Fritz's] time without affording [him] the chance to be retained"; and thanking Attorney Fritz for "taking the time to review the documents [Attorney Abrams] sent and for speaking with [him]." (2/11/21 Emails, ECF No. 56-1, at PDF p. 2.)[7] Attorney Fritz responded the same day, stating: "Understood. Thanks for the update and for considering my firm. If I can be of assistance in the future, please contact me." (*Id.* at PDF p. 1.)

Almost two years later, on January 19, 2023, Plaintiffs commenced this action by filing a Complaint. (Compl., ECF No. 1.) The next day, they filed an Amended Complaint. (Am. Compl., ECF No. 3.) In their Amended Complaint, Plaintiffs bring claims against Rakosi, Susan R. and Weber Realty for declaratory relief and rescission of the agreements that established the Partnerships. (Am. Compl. ¶¶ 1, 3-8, 158-76.) Shortly thereafter, Plaintiffs learned that Meister Seelig would be

---

[5] Pursuant to the Court's May 7 Order (5/7/23 Order, ECF No. 58), a copy of this email with its enclosures was provided to the Court for its *in camera* review.

[6] During the May 24, 2023 hearing, Attorney Abrams confirmed that "Jeff" referred to Jeffrey Weber. (5/24/23 Tr. at 20.)

[7] During the May 24, 2023 hearing, Attorney Abrams testified that, due to "miscommunication" between Plaintiffs and him, he had been mistaken when he stated to Attorney Fritz on February 11, 2021 that his mother and uncle already had retained other attorneys, and that in fact other attorneys were not retained until later, since the lawyers he believed had been retained "were not the right fit." (*See* 2/24/23 Tr. at 19, 42-44.)

representing Rakosi in this action.[8] (*See* B. Kaufman Decl., ECF No. 43, ¶ 3.) On February 2, 2023, Plaintiffs' counsel wrote a letter to Attorney Schuster stating in relevant part:

> [W]e trust that you are aware that your partner, Kevin Fritz, consulted with our clients in 2019[9] regarding partnership matters. Please confirm that you will create an ethical wall immediately, that prevents him from having any involvement in this matter or having any access to information about it. Please also inform us immediately as to whether Mr. Fritz has been involved or consulted in this matter in any way.

(Pls.' 2/2/23 Ltr., ECF No. 43-1.) Attorney Schuster did not respond to this letter. (B. Kaufman Decl. ¶ 4.)

On February 24, 2023, both Attorney Schuster and Attorney Fritz entered notices of appearance on behalf of Rakosi. (Nots. of Appearance, ECF Nos. 20, 21.) On March 1, 2023, Plaintiffs' counsel wrote another letter to Attorney Schuster. (Pls.' 3/1/23 Ltr., ECF No. 43-3.) Plaintiffs' counsel stated:

> In February 2021, Mr. Fritz had a discussion and email correspondence with Mr. Abrams in which confidential information was shared with Mr. Fritz for the purpose of considering him for a prospective representation. Through Mr. Abrams, our clients shared with Mr. Fritz their view of the merits of the dispute and confidential information related to disputes among the partners and with Weber Realty Management LLC. Mr. Fritz's knowledge of that information has the potential to be significantly harmful to our clients—his then prospective clients—in this lawsuit.

(*Id*. at 1.) Plaintiffs' counsel further stated that, because Meister Seelig "chose affirmatively to involve Mr. Fritz in this matter despite being notified of his conflict," Meister Seelig was "now conflicted from representing Mr. Rakosi (or any other party) in this matter," and requested that

---

[8] Attorney Fritz testified during the May 24, 2023 hearing that Rakosi previously had been a client of an attorney in Meister Seelig's "estate department," and that Meister Seelig had not previously represented Rakosi with respect to real estate matters. (5/24/23 Tr. at 8-9.)

[9] At the time that Plaintiffs' counsel wrote the February 2, 2023 letter, she was under the mistaken belief that the prior consultation occurred in 2019, but later learned that it occurred in 2021. (B. Kaufman Decl. at 2 n.1.)

4

Attorney Schuster "advise by no later than close of business tomorrow, March 2nd, that [Meister Seelig] agrees to withdraw from this matter." (Pls.' 3/1/23 Ltr., ECF No. 43-3, at 3.) Attorney Schuster also did not respond to this letter. (B. Kaufman Decl. ¶ 8.)

On March 8, 2023, Plaintiffs filed a pre-motion letter regarding their motion to disqualify Attorney Fritz, Attorney Schuster and Meister Seelig from representing Rakosi. (*See* Pls.' 3/8/23 Ltr., ECF No. 23.) Thereafter, in accordance with a briefing schedule set by the Court (*see* 3/10/23 Order, ECF No. 26), on April 14, 2023, Plaintiffs filed their motion to disqualify. (*See* Pls.' 4/14/23 Not. of Mot.)

On April 17, 2023, the Honorable Analisa Torres referred the motion to disqualify to the undersigned. (Order of Ref., ECF No. 46.) On May 5, 2023, Rakosi filed papers in opposition to the motion. (Rakosi 5/5/23 Mem., ECF No. 57; Fritz Decl., ECF No. 56.) On May 19, 2023, Plaintiffs filed their reply papers. (Pls.' Reply, ECF No. 60.)

A hearing was held on May 24, 2023, during which Attorney Fritz and Attorney Abrams testified. (*See* 5/24/23 Tr.) Because Attorney Abrams asserted that he had confidential information that he previously shared with Attorney Fritz during the February 8, 2021 call, the Court permitted Attorney Abrams to make an *in camera* submission by email to the Court setting forth such information, and Attorney Abrams swore to accuracy of that submission. (*See id*. at 5-7, 23, 39.)

## LEGAL STANDARDS

"The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72-73 (2d Cir. 1990) (citations omitted). "The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citation and

internal quotation marks omitted). In exercising this power, courts "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *Id*. (citation and internal quotation marks omitted).

The Second Circuit has instructed district courts to take a "restrained approach that focuses primarily on preserving the integrity of the trial process" when deciding disqualification motions. *Armstrong v. McAlpin*, 625 F.2d 433, 444 (2d Cir. 1980), *vacated on other grounds*, 449 U.S. 1106 (1981). Because disqualification motions often are made for tactical reasons, they are viewed with disfavor, and the party seeking disqualification must meet a heavy burden of proof in order to prevail. *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92, 794 (2d Cir. 1983).

While federal courts look to state disciplinary rules when considering motions for disqualification, "such rules need not be rigidly applied as they merely provide general guidance." *Mori v. Saito*, 785 F. Supp. 2d 427, 432 (S.D.N.Y. 2011) (internal citations and quotation marks omitted); *see also Hempstead Video*, 409 F.3d at 132 (state disciplinary rules "merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification" (citation omitted)).

New York Rule of Professional Conduct 1.18 addresses duties to prospective clients.[10] The rule forbids an attorney from "represent[ing] a client with interests materially adverse to those of

---

[10] Rule 1.18 provides:

> (a) Except as provided in Rule 1.18(e), a person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful

a prospective client," that is, "a person who consults with a lawyer about the possibility of forming a client-lawyer relationship," in the same or a substantially related matter, but only if "the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." N.Y. R. Prof'l Conduct 1.18(a), (c).

---

to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:

(1) both the affected client and the prospective client have given informed consent, confirmed in writing; or

(2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and

(i) the firm acts promptly and reasonably to notify, as appropriate, lawyers and nonlawyer personnel within the firm that the personally disqualified lawyer is prohibited from participating in the representation of the current client;

(ii) the firm implements effective screening procedures to prevent the flow of information about the matter between the disqualified lawyer and the others in the firm;

(iii) the disqualified lawyer is apportioned no part of the fee therefrom; and

(iv) written notice is promptly given to the prospective client; and

(3) a reasonable lawyer would conclude that the law firm will be able to provide competent and diligent representation in the matter.

(e) A person is not a prospective client within the meaning of paragraph (a) if the person:

(1) communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship; or

(2) communicates with a lawyer for the purpose of disqualifying the lawyer from handling a materially adverse representation on the same or a substantially related matter.

N.Y. R. Prof'l Conduct 1.18.

The "information" referred to in Rule 1.18 is "confidential information," as defined in Rule 1.6(a). *See Mayers v. Stone Castle Partners, LLC,* 126 A.D.3d 1, 7 (1st Dep't 2015). Rule 1.6(a) defines confidential information, as follows:

> "Confidential information" consists of information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential. "Confidential information" does not ordinarily include (i) a lawyer's legal knowledge or legal research or (ii) information that is generally known in the local community or in the trade, field or profession to which the information relates.

N.Y. R. Prof'l Conduct 1.6(a).

"The test [under Rule 1.18] focuses on the *potential* use of the information [received from the prospective client]," not the "*actual* use." N.Y.C. Bar Ass'n, *Duties to Prospective Clients After Beauty Contests and Other Preliminary Meetings*, Formal Opinion 2013-1, at 5 (Oct. 1, 2013), available at https://www.nycbar.org/member-and-career-services/ethics (last visited May 25, 2023) (emphases in original). "Whether information could be 'significantly harmful' to a prospective client would depend, of course, on the relevant facts and circumstances of the particular situation." *Id*. (footnote omitted).

The rule does not define "significantly harmful" information, but it has been interpreted to include a party's settlement strategy; its "bottom line" in settlement; its "views and impressions of [the] litigation;" and its "opinions and impression of even public documents and facts." *See Benevida Foods, LLC v. Advance Mag. Publishers Inc.*, No. 15-CV-02729 (LTS) (DF), 2016 WL 3453342, at *11 (S.D.N.Y. June 15, 2016). The types of information that are not usually "significantly harmful" include information that is public; information regarding the "history of the dispute;" and information "likely to be revealed" in discovery. *See id*.

A State Bar of Wisconsin ethics opinion, which contains an overview of other authorities, provides a useful discussion of the meaning of "significantly harmful," as follows:

> Information may be "significantly harmful" if it is sensitive or privileged information that the lawyer would not have received in the ordinary course of due diligence; or if it is information that has long-term significance or continuing relevance to the matter, such as motives, litigation strategies, or potential weaknesses. "Significantly harmful" may also be the premature possession of information that could have a substantial impact on settlement proposals and trial strategy; the personal thoughts and impressions about the facts of the case; or information that is extensive, critical, or of significant use.

State Bar of Wi. Formal Ethics Opinion EF-10-03: *Conflicts arising from consultations with prospective clients; significantly harmful information*, at 4-5 (Dec. 17, 2010), available at https://www.wisbar.org/formembers/ethics/Ethics%20Opinions/EF-10-03.pdf (last visited May 25, 2023).

## ANALYSIS

Plaintiffs' motion to disqualify is brought pursuant to Rule 1.18. (Pls.' 4/14/23 Mem., ECF No. 45, at 6.) They argue that they were prospective clients of Attorney Fritz in connection with a substantially related matter against Rakosi and that Attorney Fritz, who now represents Rakosi in this case, obtained information that could be significantly harmful to Plaintiffs in this case, thus requiring disqualification of Attorney Fritz, as well as other lawyers at Meister Seelig, including Attorney Schuster. (*Id*. at 6-14.) For the reasons set forth below, the Court agrees.

### I.   Plaintiffs Were Prospective Clients Of Attorney Fritz

Plaintiffs contend that they were prospective clients of Attorney Fritz because Attorney Abrams was acting as a representative of Plaintiffs when he spoke with Attorney Fritz, and his

9

purpose was to discuss the possibility of Attorney Fritz representing Plaintiffs.[11] (Pls.' 4/14/23 Mem. at 7.) Rakosi argues that Plaintiffs were not prospective clients of Attorney Fritz because Plaintiffs did not personally have any communications with Attorney Fritz, but instead communicated through their "intermediary," Attorney Abrams. (Rakosi 5/5/23 Mem., ECF No. 57, at 4-5.)

Rule 1.18(a) provides in relevant part that "a person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client." N.Y. R. Prof'l Conduct 1.18(a). Subsection (a) does not address circumstances in which an individual uses an intermediary to help secure legal counsel. However, courts have recognized, in analogous circumstances, the ability of a client (or prospective client)[12] to have privileged communications with an attorney through an intermediary. *See Sevenson Env't Servs., Inc. v. Sirius Am. Ins. Co.*, 64 A.D.3d 1234, 1236 (4th Dep't 2009) ("the attorney-client privilege extends to communications to 'one serving as an agent of either attorney or client'" ( citation omitted)); *Bendict v. Amaducci*, No. 92-CV-05239 (KMW), 1995 WL 23555, at *1 (S.D.N.Y. Jan. 20, 1995) (communications with third party, who assisted plaintiffs on financial matters and with litigation, were made for purpose of obtaining or consulting with attorneys and were protected by attorney-client privilege); *Stroh v. Gen. Motors Corp.*, 213 A.D.2d 267, 268 (1st Dep't 1995) (finding that elderly woman's daughter acted as woman's agent in selecting law firm to represent her, transporting her to law office and putting her mother at ease so she could communicate effectively with counsel); *Harkobusic v. Gen.*

---

[11] Plaintiffs submitted a declaration from Plaintiff Freedman in support of their motion, stating that Plaintiffs "asked that [Attorney Abrams] help [them] in interviewing counsel for the purposes of assessing the viability of a lawsuit against [Rakosi and Weber Realty]." (Freedman Decl. ¶ 4.)

[12] "The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance," *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007), and therefore "may attach to a prospective client's 'initial statements' to an attorney who is not ultimately hired." *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 100 (S.D.N.Y. 2009) (citing *United States v. Dennis*, 843 F.2d 652, 656 (2d Cir. 1988)).

*Am. Transp. Corp.*, 31 F.R.D. 264, 266 (W.D. Pa. 1962) (finding that brother-in-law was acting as plaintiff's agent when he communicated with prospective attorneys and that those communications were privileged); *see also* Restatement 3d of the Law Governing Lawyers, § 70 ("The privilege normally applies to communications involving persons who on their own behalf seek legal assistance from a lawyer . . .. However, a client need not personally seek legal assistance, but may appoint a third person to do so as the client's agent.").

In the present case, the Court finds that Plaintiffs were prospective clients of Attorney Fritz, pursuant to Rule 1.18, because Plaintiffs, acting through Attorney Abrams, "consult[ed] with [Attorney Fritz] about the possibility of forming a client-lawyer relationship." *See* N.Y. R. Prof'l Conduct 1.18(a). Indeed, Attorney Fritz admitted during the May 24, 2023 hearing that Plaintiffs were prospective clients (5/24/23 Tr. at 29 ("The prospective clients were plaintiffs though I never spoke to them, correct.")), and that he had requested that Attorney Abrams send him a $20,000 retainer "to get started." (*See id*. at 12-13, 28-29.)

II. **The Present Case Is Substantially Related To The Matter About Which Attorney Fritz Was Contacted**

In opposition to Plaintiffs' motion to disqualify, Defendant Rakosi argues that the matter about which Attorney Fritz was consulted in February 2021 is not substantially related to the present case. (Rakosi Mem. at 6-7.) The Court disagrees.

Rakosi's opposition memorandum acknowledges that, in the call that Attorney Fritz had with Attorney Abrams in February 2021, Attorney Abrams contended that "Rakosi had breached the partnership agreements by allegedly revising the management agreement without the requisite consent." (*See* Rakosi Mem. at 6.) These very same contentions are pled in several paragraphs of the Amended Complaint as one of the bases for Plaintiffs' rescission claim. (*See*, *e.g.*, Am. Compl.

11

¶¶ 119 ("Plaintiffs were not shown the final terms of the Management Agreement by Rakosi or anyone else before it was signed."); 122 ("Without obtaining Plaintiffs' written approval as required by the Rider and the Partnership Agreements, Rakosi initial[l]ed handwritten changes made by Weber, which changed Weber['s] compensation . . .."); 126 ("Had Plaintiffs been made aware of the amended provisions of the Management Agreement, they would not have agreed to the Management Agreement, nor signed the Partnership Agreements, which were executed almost one year later.").)

In addition, Attorney Fritz testified that the matter about which he was consulted by Attorney Abrams involved a possible claim against Rakosi "because [ ] Abrams referred to [ ] Rakosi unilaterally making changes to a management agreement," and that the rescission claim in the present case is based upon alleged misconduct by Rakosi. (*See* 5/24/23 Tr. at 9-11.) Thus, it is quite clear that the matters are substantially related.

### III. **Attorney Fritz Obtained Information That Could Be Significantly Harmful To Plaintiffs In This Case**

Rakosi argues that "Meister Seelig did not learn or receive any confidential information from Abrams." (Rakosi Mem. at 6.) Rakosi further argues that, even if confidential information was shared by Attorney Abrams with Attorney Fritz, such information "is not 'significantly harmful' to Plaintiffs in this matter." (*Id*. at 7.) Based upon the Court's review of the record in this case, as well its assessment of the credibility of the witnesses, the Court finds that confidential information was in fact provided by Attorney Abrams to Attorney Fritz. In addition, the Court finds that such information could be significantly harmful to Plaintiffs in this case.

Attorney Fritz admits that he discussed the partnership agreements and the management agreements with Attorney Abrams, but states that these documents were made publicly available

by Plaintiffs. (*See* Fritz Decl. ¶¶ 4-5.) The fact that the documents are public is of no moment since a reasonable inference can be drawn that the discussion of the documents between Attorney Fritz and Attorney Abrams included Attorney Abrams' views and impressions of such documents. *See Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 436 (N.D.N.Y. 2012) ("Just having Defendants' opinions and impression of even public documents and facts would establish privileged communication and if revealed, in any form or fashion, would constitute significant harm." (citation omitted)).

The Court carefully has reviewed the sworn statements contained in the *in camera* submission that Attorney Abrams made as part of the May 24, 2023 hearing regarding the confidential information that Attorney Abrams supplied to Attorney Fritz during their February 2021 call. Given the relationships between and among Attorney Abrams and the Plaintiffs, the statements in Attorney Abrams' submission about the content of such information ring true. Moreover, the information, if revealed to Rakosi, could be significantly harmful to Plaintiffs.[13]

In deciding the pending motion, the Court has weighed the credibility of Attorney Fritz and Attorney Abrams and finds them both to be credible. Although Attorney Fritz asserted that he had no gaps in his memory (5/24/23 Tr. at 15-16), the confidential information contained in Attorney Abrams' *in camera* submission is of a type that easily could have faded from Attorney Fritz's memory over the course of two years. However, "[o]ne never knows what event will stimulate one's memory and bring recollections to the surface." *I Heng Ngan v. Wei Su*, 13 Misc. 3d 1229(A), 2006 N.Y. Slip Op. 52049(U), 2006 WL 3026422, at *2 (Sup. Ct., Queens County, 2006). The Court finds

---

[13] The question before the Court is not whether, as Rakosi posits, the information shared by Attorney Abrams with Attorney Fritz is or "is not 'significantly harmful' to Plaintiffs in this matter." (*See* Rakosi Mem. at 7.) Rather, the question is whether such information "could be significantly harmful" to Plaintiffs. *See* N.Y. R. Prof'l Conduct 1.18(c).

13

that former prospective clients, like Plaintiffs here, are "entitled to freedom of apprehension and to certainty that [their] interests will not be prejudiced by disclosure of confidential information." *See In re Est. of Kaufman*, 44 Misc. 3d 1216(A), 2014 WL 3739575, at *4 (Sur. Ct., Nassau County, 2014).

Thus, "in order to preserve the integrity of the adversary process," *see Zalewski*, 856 F. Supp. 2d at 437, the Court, in its discretion, finds that Attorney Fritz must be disqualified from representing Rakosi in this case. The Court finds that the instant motion was not filed for tactical reasons, but was filed out of a sincerely held belief that the information disclosed to Attorney Fritz by Attorney Abrams could be significantly harmful to Plaintiffs in this case.

### IV.     **Other Attorneys At Meister Seelig Also Are Disqualified, Including Attorney Schuster**

Under Rule 1.18(c), "[i]f a lawyer is disqualified from representation . . ., no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter," with two exceptions. N.Y. R. Prof'l Conduct 1.18(c). The first exception would have required consent of the prospective clients (*i.e.*, the Plaintiffs), *see id*. 1.18(d)(1), which obviously was not obtained. The second exception would have required Meister Seelig, among other things, "to notify, as appropriate, lawyers and nonlawyer personnel within the firm that the personally disqualified lawyer [*i.e.*, Attorney Fritz] [was] prohibited from participating in the representation of the current client," *i.e.*, Rakosi, and to "implement[] effective screening procedures." *Id*. 1.18(d)(2). Since Attorney Fritz participated in the representation of Rakosi, including by entering an appearance as counsel of record in this case, the second exception also does not apply. Thus, Attorney Schuster and other attorneys at Meister Seelig are disqualified from representing Rakosi in this case.

15

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to disqualify is GRANTED.

**SO ORDERED.**

Dated:      New York, New York
            May 27, 2023

_____
STEWART D. AARON
United States Magistrate Judge